IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| LINDA F. GENTRY | ) | |
| | ) | |
| v. | ) | No. 3:12-1139 |
| | ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION | ) | |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 16). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 10),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## I. Introduction

Plaintiff filed her application for disability insurance benefits on September 30, 2010, alleging a disability onset date of December 5, 2008, due to degenerative disc

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

disease and tears at L4-L5. (Tr. 106-12, 136, 140) Plaintiff's claim was denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of her claim by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on January 19, 2012, when plaintiff appeared with counsel and gave testimony. (Tr. 30-53) At the hearing, plaintiff amended her alleged onset date to August 11, 2010. (Tr. 15, 33) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until March 16, 2012, when he issued a written decision finding plaintiff not disabled. (Tr. 15-25) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since August 11, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease, anxiety disorder, and major depressive disorder (20 CFR 44.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work (lift up to 50 pounds occasionally and up to 25 pounds frequently; stand or walk for up to 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday) as defined in 20 CFR 404.1567(b), except the claimant can understand and remember simple and multistep (1-4 step) detailed tasks, but cannot make independent decisions at an executive level. The claimant can concentrate and persist for two-hour periods in an 8-hour day with customary breaks. The claimant can have occasional interaction with the general public, coworkers, and supervisors, but would work better with things rather than people. The claimant can adapt to infrequent change.

6. The claimant is capable of performing past relevant work as a freezer operator and meter reader. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2010, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 17-19, 24-25)

On September 17, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following record review is taken from defendant's brief, Docket Entry No. 16 at 2-5:

A. Medical Evidence[2]

On February 1, 2011, Plaintiff underwent a psychological consultative examination (CE) with Brian D. Haworth, Psy.D., H.S.P. (Tr. 298-303). Plaintiff reported that she had never seen a mental health professional for outpatient treatment, but that she had been prescribed psychiatric medications throughout her adult life (Tr. 300). In the Summary section, Dr. Haworth noted the following:

---

[2]The medical evidence as described here ... focuses on the allegations upon which Plaintiff currently alleges disability, and the medical evidence during the relevant time period.

> [Plaintiff] appears to fall into the average range of intellectual functioning. She showed evidence of mild impairment in her short-term memory. She showed evidence of mild impairment in her ability to sustain concentration. She showed no evidence of impairment in her long-term and remote memory functioning.
>
> Her current psychiatric state was depressed. She shows evidence of a moderate to marked impairment in her social relating. She appears to be moderately to markedly impaired in her ability to adapt to change. She appears able to follow instructions, both written and spoken. She appears to have had a stable work history until April of 2010. She appears able to handle finances.

(Tr. 302-03). Dr. Haworth diagnosed Plaintiff with Major Depressive Disorder, recurrent, moderate-exacerbated by the pain; Anxiety Disorder not otherwise specified-secondary to pain; and Alcohol Dependence-in sustained partial remission (Tr. 303). He assessed her with a GAF score of 50 (Tr. 303).

On February 16, 2011, Dr. Haworth completed a "Medical Source Statement of Ability To Do Work-Related Activities (Mental)" (Tr. 304-06). He checked that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairment (Tr. 304). For Plaintiff's restrictions in the abilities to understand and remember simple instructions; carry out simple instructions; and make judgments on simple work-related decisions, Dr. Haworth checked boxes for both "None" and "Mild" (Tr. 304). He also checked that Plaintiff was mildly restricted in her abilities to understand and remember complex instructions; carry out complex instructions; and make judgments on complex work-related decisions (Tr. 304). He explained: "[Plaintiff] appears to fall into the average range of intellectual functioning. She showed evidence of mild impairment in her short-term memory. She showed evidence of mild impairment in her ability to sustain concentration. She showed no evidence of impairment in her long-term and remote memory functioning"

4

(Tr. 304). Dr. Haworth also opined that Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as to respond to changes in the routine work setting, were affected by her impairments (Tr. 305). He checked both the "Moderate" and "Marked" boxes for the following abilities: interact appropriately with the public; interact appropriately with supervisor(s); interact appropriately with co-workers; and respond appropriately to usual work situations and to changes in a routine work setting (Tr. 305). He explained:

> [Plaintiff's] current psychiatric state was depressed. She shows evidence of a moderate to marked impairment in her social relating. She appears to be moderately to markedly impaired in her ability to adapt to change. She appears able to follow instructions, both written and spoken. She appears to have had a stable work history until April of 2010. She appears able to handle finances.

(Tr. 305). Dr. Haworth further checked that no other capabilities were affected by Plaintiff's impairment (Tr. 305).

On February 22, 2011, a State agency consultant, Jayne F. Dubois, Ph.D., completed a Psychiatric Review Technique form (Tr. 307-20). She checked that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of extended-duration decompensation (Tr. 317). At the end of the form, Dr. Dubois summarized medical and non-medical evidence from the record, including Dr. Haworth's CE (*see* Tr. 319). Presumably, Dr. Dubois also completed a Mental Residual Functional Capacity (MRFC) Assessment the same day (Tr. 321-24).[3] In Section I, she checked that Plaintiff was

---

[3]The MRFC Assessment does not state who completed it.

"Moderately Limited" in four areas and "Not Significantly Limited" in the other 16 areas (Tr. 321-22). In Section III, the Functional Capacity Assessment, Dr. Dubois wrote:

> [Plaintiff] can understand and remember simple and multistep (1-4 step) detailed tasks, but cannot make independent decisions at an executive level.
>
> [Plaintiff] can concentrate and persist for a two hour time period in an 8 hour day with customary breaks within the restrictions applied above.
>
> [Plaintiff] can interact appropriately [with the] general public, coworkers & supervisors, within the restrictions applied above, but would work better [with] things than [with] people.
>
> [Plaintiff] can adapt to infrequent change within the restrictions applied above.

(Tr. 323).

Plaintiff received mental health treatment from Volunteer Behavioral Health Care System (VBHCS) from March 2011 through October 2011 (Tr. 367-400, 409-22). She was diagnosed with Bipolar II disorder (*e.g.*, Tr. 385).

On July 8, 2011, a second State agency consultant, C. Warren Thompson, Ph.D., completed a "Report of Contact" (Tr. 403). Dr. Thompson summarized new evidence relating to Plaintiff's mental impairment, including treatment notes from VBHCS (*see* Tr. 403). He then wrote: "The initial mental assessment has been reviewed and found to be technically and substantively correct; it is affirmed as written" (Tr. 403).

B.     VE Testimony

The ALJ presented the vocational expert (VE) with a hypothetical individual of Plaintiff's age, education, and work experience, who could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, and sit,stand, and walk approximately six hours

6

each; would be able to understand and remember simple and multi-step (1-4) detailed tasks, but could not make independent decisions at an executive level; could concentrate and persist for two-hour time periods during an eight-hour day, with customary breaks; could have only occasional interaction with the general public, co-workers, and supervisors; and would be able to adapt to infrequent change (Tr. 49-50). The VE testified that Plaintiff would be able to perform her past relevant work of freezer operator and meter reader (Tr. 50-51). The ALJ then noted the definitions of "Moderate" and "Marked" in Dr. Haworth's opinion (Tr. 51). He asked the VE if Plaintiff's past relevant work would be available if there were moderate limitations in the abilities to deal with the public, supervisors, and coworkers, and to respond to usual situations and changes in the routine work setting (Tr. 51). The VE replied affirmatively (Tr. 51). The ALJ then asked, if there were marked limitations in these abilities, would Plaintiff be able to perform her past relevant work, or other jobs in the national economy (Tr. 52). The VE stated that all work would be precluded (Tr. 52).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir.

1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

## B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r

of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

C. Plaintiff's Statement of Errors

9

The single issue raised by plaintiff in this appeal is as follows:

> The ALJ's residual functional capacity finding is not supported by substantial evidence as he expressly gave controlling weight to the opinion of the consultative psychologist but did not adopt, in the residual functional capacity finding, the limitations assessed by the examiner.

(Docket Entry No. 13 at 8) Plaintiff further contends that, although the ALJ gave little weight to the assessments of the nonexamining psychological consultants, particularly because additional evidence had been submitted after those assessments were rendered and other opinions (i.e., that of consultative examiner Dr. Haworth) were more consistent with the record as a whole, the ALJ's finding of plaintiff's mental RFC "reveals that the ALJ in fact accepted the opinions of the state agency doctors and rejected the opinion of Dr. Haworth." Id. at 9. Plaintiff concludes by arguing that the ALJ failed to provide "good reasons" for implicitly rejecting Dr. Haworth's opinion in favor of the consultants' opinions which he nominally rejected, resulting in a decision that is not sufficiently specific to make clear to any subsequent reviewers the reasons for the weight given the respective opinions. Id. at 10.

The undersigned finds these arguments to be without merit. In the first place, the opinions of the examining and nonexamining consultants are far more closely aligned than allowed for in plaintiff's argument, or than indicated in the ALJ's summary dismissal of the "[o]ther assessments by [nonexamining] State agency medical consultants." (Tr. 23) Indeed, the opinion of nonexamining psychological consultant Jayne F. Dubois, Ph.D., relies extensively on the opinion of Dr. Haworth, noting the results of his mental status examination and history, adopting his diagnoses of plaintiff's mental impairments, and explicitly giving weight to his assessment of work-related limitations. (Tr. 319) Dr. Dubois

10

converted Dr. Haworth's assessment of mild limitations in understanding, remembering, and concentrating, and "moderate to marked" limitations in social functioning and adapting to change, into a more particularized functional capacity assessment which was to a large extent incorporated by the ALJ in his finding of plaintiff's RFC: plaintiff "can understand and remember simple and multistep (1-4 step) detailed tasks, but cannot make independent decisions at an executive level"; "can concentrate and persist for a two hour time period in an 8 hour day with customary breaks within the restrictions applied above"; "can interact appropriately w/general public, coworkers & supervisors, within the restrictions applied above, but would work better w/things than w/people"; and "can adapt to infrequent change within the restrictions applied above." (Tr. 323) The only modification to these abilities which the ALJ made in his RFC finding is that he found plaintiff limited to only occasional interaction with the general public, coworkers, and supervisors. (Tr. 19, 50) In so doing, the ALJ underscored the primacy of Dr. Haworth's opinion that this functional ability was "moderately to markedly" limited, whereas Dr. Dubois had concluded that the evidence ultimately supported no more than a moderate limitation in this domain. This distinction is not so fine as to be without a difference: at plaintiff's hearing, the vocational expert testified that her past relevant work as a cashier could still be performed under the definition of "moderate" limitation in the ability to interact with the public, i.e., "more than a slight limitation in this area, [but] the individual is still able to function satisfactorily" (Tr. 51), but that this job could not be performed under the limitation to only occasional interaction with the public. (Tr. 50) The ALJ thus determined that, consistent with Dr. Haworth's opinion, plaintiff's limitation in social functioning was something more than moderate, and her past relevant job as a cashier was therefore no longer available. (Tr. 24)

11

However, the ALJ also made it clear that he did not credit the existence of marked limitations, either mental or physical, as he concluded his discussion of plaintiff's RFC with the following:

> The undersigned finds the credibility of the alleged mental impairments is eroded by the fact there is little evidence in the medical record of mental health treatment until after filing for disability benefits, even though the claimant was covered under free TennCare Insurance. Additionally, the undersigned notes a marked increase in treatment sought, for both alleged mental and physical impairments, after the initial denial of disability date. Much of the treatment contained in the medical record of evidence dates after both the consultative examination and initial denial of benefits. ... Due to the conservative nature of treatment and the overall increase in treatment occurring after denial of benefits, the undersigned finds the credibility of the alleged impairments significantly eroded.

(Tr. 24) While the vocational expert testimony in this case established that marked limitations would be disabling (Tr. 52), the ALJ clearly credited Dr. Haworth's opinion to the extent that plaintiff's limitations in social functioning and adaptation were something more than moderate but less than marked. This is an entirely fair interpretation of the opinion, and one that is not undermined by the fact that Dr. Haworth assigned a score of 50 on the Global Assessment of Functioning (GAF) scale.[4] Accordingly, the undersigned finds that the

---

[4] While a score of 50 is the highest score in the 10-point range indicating "serious symptoms" or "any serious impairment in social, occupational, or school functioning," American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000), such a score is of no particular value in interpreting Dr. Haworth's opinion as to plaintiff's functional abilities/limitations. GAF scores are not a reasonable replacement for the more particularized data available in actual treatment notes or reports of examination results, but instead are largely superficial descriptors representing "a clinician's subjective rating of an individual's overall psychological functioning" in terms "understandable by a lay person." See, e.g., Kennedy v. Astrue, 247 Fed. Appx. 761, 766 (6th Cir. Sept. 7, 2007); see also, e.g., Smith v. Astrue, 565 F.Supp.2d 918, 925 (M.D. Tenn. 2008).

ALJ did not, as plaintiff argues, implicitly reject Dr. Haworth's opinion despite explicitly assigning it significant weight, but rather forged a rationale which properly weighed the opinion evidence together with the credibility of the plaintiff, resulting in a decision that is internally consistent, true to the opinion of Dr. Haworth, and supported by substantial evidence on the record as a whole. The SSA's decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Cowherd v. Million</u>, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 14th day of July, 2015.

s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE